# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL SMITH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 16-00478-N |
| | ) | |
| CITY OF MOBILE, *et al.*, | ) | |
|     Defendants. | ) | |

## ORDER

The undersigned has considered the parties' briefing (Docs. 52 – 54) timely submitted in response to the Court's August 15, 2017 order (Doc. 51), which gave notice of intent to grant summary judgment under Federal Rule of Civil Procedure 56(f) in favor of all Defendants on the federal claims raised in Counts I and III of the complaint. Upon consideration, the undersigned finds that summary judgment is due to be granted in part for the reasons previously stated in the Court's August 15 order.

> The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process. *Cf. Zinermon v. Burch,* 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L.Ed.2d 100 (1990). A violation of either of these kinds of protection may form the basis for a suit under section 1983. *Id.*

*McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc).

Count I alleges that the Defendants deprived Smith of "his property right interest in his job as a county merit system employee…" (Doc 1 at 9, ¶ 52). As was

explained previously, it has long been the law of this Circuit that "areas in which substantive rights are created only by state law (as is the case with…employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution. As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed." *McKinney*, 20 F.3d at 1556. Thus, "an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component. Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." *Id.* at 1560. *See also Bell v. City of Demopolis, Ala.*, 86 F.3d 191, 192 (11th Cir. 1996) (per curiam) (*McKinney* "held that the alleged wrongful discharge of an employee by a state actor does not give rise to a substantive due process claim but instead implicates only procedural due process."). Count III alleges that the Defendants deprived Smith "his due process right to a fair disciplinary hearing" (Doc. 1 at 10, ¶ 54), which also implicates only procedural due process. *See id.* at 1559 ("Whether an individual…asserts that his particular hearing was not fair and impartial, he has raised only procedural due process concerns."). Smith's brief confirms that he is only asserting procedural due process violations. (*See* Doc. 52 at 8 – 9).

> It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property. More specifically, the Supreme Court has explained that a "tenured employee

is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before a state or state agency may terminate an employee. In other words, the employee is entitled to "some kind" of pre-termination hearing. That hearing is not a mini-trial and "need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."

*McKinney*, 20 F.3d at 1561 (citations omitted) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 545-46 (1985)). *See also Gilbert v. Homar*, 520 U.S. 924, 929 (1997) ("In *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), we concluded that a public employee dismissable only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing. Stressing that the pretermination hearing 'should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action,' *id.,* at 545–546, 105 S. Ct., at 1495, we held that pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story, *id.,* at 546, 105 S. Ct., at 1495.").

> The lack of a meaningful opportunity to be heard is at the core of a due process claim because "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law."* Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990) (emphasis

in original) (quoting *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981)).

…

"Although the Due Process Clause generally requires notice and an opportunity to be heard *before* the government seizes one's property ... the Supreme Court 'has rejected the proposition that ... the State [must always] provide a hearing prior to the initial deprivation of property.' " *Reams v. Irvin,* 561 F.3d 1258, 1263 (11th Cir. 2009) (emphasis in original) (internal citation omitted) (quoting *Parratt,* 451 U.S. at 540–41, 101 S. Ct. at 1915–16); *see also Hudson v. Palmer,* 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).

"[T]he feasibility of predeprivation procedures [i]s the central question in determining [whether predeprivation procedures must be provided]." *Rittenhouse v. DeKalb Cnty.,* 764 F.2d 1451, 1455 (11th Cir. 1985); *see also Carcamo v. Miami–Dade Cnty.,* 375 F.3d 1104, 1105 n.4 (11th Cir. 2004). So long as the State provides adequate post-deprivation remedies, "due process d[oes] not require pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property." *McKinney v. Pate,* 20 F.3d 1550, 1562–63 (11th Cir. 1994) (en banc).

Pre-deprivation process is impractical "where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure," because "the state cannot know when such deprivations will occur." *Hudson,* 468 U.S. at 532, 533, 104 S. Ct. at 3203. These "established state procedure[s]" are typically established for the *purpose* of depriving citizens of their property. *Rittenhouse,* 764 F.2d at 1455.

*Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1316–17 (11th Cir. 2011)

Here, the "established state procedures" for depriving certain Mobile County public employees, such as Smith, of their constitutionally protected property

interests in their employment tenure, and for providing them both pre- and post-termination process, are found in Act No. 470, Local Acts of 1939, as amended by Act No. 2004–105, Ala. Acts 2004 ("Local Act 470"), and the Rules and Regulations of the Personnel Board ("Board Rules").[1] More specifically, Board Rule 14.3(a) provides an "established state procedure" for pre-termination hearings.[2] Additional Board Rules provide an "established state procedure" for a post-termination appeal to the Mobile County Personnel Board (*see id.* at 55-56

---

[1] Under Section IX of Local Act 470, the Board Rules "have the force and effect of law." (Doc. 41-3).

[2] Board Rule 14.3(a) states:

> Before any permanent employee is dismissed, suspended or demoted for cause, the Appointing Authority or his designated representative shall afford the employee due process in the form of a pre-disciplinary hearing. Written notice of the reasons for termination, suspension or demotion must be given the employee at least twenty-four (24) hours prior to the pre-disciplinary hearing, at which time the employee must be given the opportunity to respond orally and/or in writing to the charges made before the official, or the designated representative of the official, charged with the responsibility of making the disciplinary decision. The pre-disciplinary hearing must be held within seven (7) days after written notice to the employee. The determination as a result of the pre-disciplinary hearing must be communicated to the employee in writing within fourteen (14) days of the hearing. Circumstances that prevent adherence to these timeframes must have approval of the Director. The dismissal, suspension or demotion of an employee by an Appointing Authority without having first accorded the employee a pre-disciplinary hearing in accordance with this Rule shall be void and of no force and effect, and shall not be recognized by the Board, except in extraordinary situations as hereinafter specified.

(Doc. 41-4 at 54). No party has argued that the "extraordinary situations" exception applies in this case.

(Board Rules 14.4 – 14.8)), and § XXXIV of Local Act 470 provides for appeal of the Board's decision to the Circuit Court of Mobile County.

This is not a case involving a complete lack of a pre-termination hearing; there is no dispute that Smith received "some kind of a hearing" prior to his termination on September 9, 2014. *Loudermill*, 470 U.S. at 542. This is also not a case where the terminated employee is challenging the "established state procedures" themselves as unconstitutional. *See Galbreath v. Hale Cty., Alabama Comm'n*, Civil Action No. 15-308-CG-N, 2017 WL 457197, at *13 (S.D. Ala. Feb. 1, 2017) ("[E]ither a complete lack of a preterminaton hearing or a constitutional attack on the policy itself would not be barred by *McKinney*…"). Rather, by all accounts this appears to be a case, like *McKinney*, which does "not contest the sufficiency of the review system in question but that the review system was applied in a deficient manner" (i.e., by the Defendants' alleged failure to follow Local Act 470 and the Board Rules). *Id. See also Bell*, 86 F.3d at 192 ("Bell attempts to distinguish *McKinney* [by] describ[ing] his attack as one on the termination process itself, whereas the plaintiff in *McKinney* challenged procedures as they applied to him. For the first time in his supplemental brief in support of his motion to set aside the judgment, Bell stated his challenge was 'to the state's system itself, and its failure to ever provide him with a proper evidentiary hearing with counsel, witnesses, and cross-examination.' Bell's characterization cannot belie the fact that the meat of his complaint-bias on the part of the police committee and the city

council and inadequate time to speak in his post-termination hearing-amounts to an 'as applied' attack.").

Counts I and III both expressly allege that the respective deprivations at issue were caused by the Defendants' failure to follow the "established state procedures" in Local Act 470 and the Board Rules.[3] Smith's brief in response to the August 15 order acknowledges his complaint "alleges that various Rules and Laws were not followed or were denied to him by the named Defendants" (Doc. 52 at 5) and is replete with allegations that the deprivations at issue were caused by the Defendants' failure to adhere to the Board Rules. For instance, Smith alleges that his pre-termination hearing was not a proper "Rule 14.3(a) pre-disciplinary hearing," but was instead "a Trial Board Hearing based on M[obile Police Department] disciplinary rules." (*Id.* at 2. *See also id.* at 4 ("The record taken as a whole suggests that the City provided Smith with a disciplinary hearing according to MPD regulations and not MCPB Rules.")). In other words, Smith admits he received "some kind of hearing" prior to his termination, but that the hearing did

---

[3] Count I alleges that, "[b]y terminating Plaintiff Smith **without following mandatory and nondiscretionary merit system 'due process procedures'**, Defendants deprived Plaintiff of his property right interest in his job as a county merit system employee without due process of law." (Doc. 1 at 9, ¶ 52 (emphasis added)). Count III, entitled "INTENTIONAL VIOLATION OF SECTION XXXIV OF THE LOCAL ACTS, THE RULES OF THE MOBILE COUNTY PERSONNEL BOARD STATUTORY DUE PROCESS VIOLATIONS," alleges the Defendants "intentionally denied Plaintiff Smith his due process right to a fair disciplinary hearing **in clear violation of MCPB Rule 43.3(a)** [sic] by serving him with an inadequate notice of hearing, and in the conduct of the hearing itself by denying Smith the right to call witnesses of his choose, and to confront witnesses called by the City." (*Id.* at 10, ¶ 54 (emphasis added)).

not conform to the "established state procedures" for such hearings required by Board Rule 14.3(a). Smith also claims that Dees, in his role as Personnel Director, "failed to investigate the process as required by Rule 14.5" and "did not perform his duties as Personnel Director" (*id.* at 3, 7; *see also id.* at 5 – 6 ("Smith has alleged, among other points that Dees failed to adhere to Rule 14.5. Dees' deposition clearly provides at a minimum a reasonable inference that Dees only confirmed a part of Rule 14.3(a) and equally failed to realize that MPD had used their own disciplinary procedures (a Trial Board convened under MPD's regulations)…to terminate Smith in violation of Rule 14.3(a) – a rule possessing force and effect of law… If Dees had investigated the termination as required by Rule 14.5; then Dees would have learned of the documents he claimed to have never seen…or Dees might have realized that the MPD disciplinary process is not compliant with MCPB Rule 14.3(a). Furthermore, Dees would have learned that the Mayor never designated anyone to hold a MCPB Rule 14.3(a) pre-disciplinary hearing.") – in other words, that Dees failed to follow the "established state procedures" in Board Rule 14.5. He asserts that the City "simply ignores the MCPB Rules and instead adheres to its own regulations regarding disciplinary hearings" and that "the MPD and Mayor knowingly elected to ignore MCPB Rule 14.3(a) and instead used their own pre-disciplinary procedures, which certainly were never authorized by the Personnel Director or MCPB or that would be a violation of statutory law" (Doc. 52 at 9 – 10) – yet again, that the Defendants failed to follow "established state procedures."[4] By

---

[4] In his brief, Smith also rehashes arguments that Dees and the Board violated his due process rights by failing to acknowledge and process Smith's Notice of Appeal of the

allegedly failing to follow these established state procedures, the Defendant state actors engaged in the kind of "random, unauthorized acts" for which "pre-deprivation process is impractical." *Hudson,* 468 U.S. at 532. *See also Zinermon v. Burch*, 494 U.S. 113, 130 (1990) ("[A]n individual state employee's ability to foresee the deprivation is 'of no consequence,' because the proper inquiry under *Parratt* is 'whether the *state* is in a position to provide for predeprivation process.'" (quoting *Hudson*, 468 U.S. at 534 (emphasis added)).

In *McKinney*, the plaintiff alleged he was deprived of procedural due process during his pre-termination hearing because the decision-making entity was biased against him. The en banc Eleventh Circuit, relying on the "unambiguous"

---

Board's decision to the Mobile County circuit court. (*See, e.g.,* Doc. 52 at 3 ("Based on Dees' deposition testimony, he confirmed that two time-stamps appeared on Smith's notice of appeal to the MCPB dated December 12, 2014 with one of those being a MCPB time-stamp dated December 12, 2014…A reasonable inference can be supported that Dees and the MCPB and their agents failed to process further Smith's appeal and thereafter intentionally denied Smith his right of appeal to the Circuit Court of Mobile County.")). The Court previously dismissed the federal due process claims asserted in Count IV, which were based on the same circumstances, for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. (*See* Doc. 50). To the extent any of the federal due process claims in Counts I and III are also based on those circumstances, the *Rooker-Feldman* doctrine deprives this Court of jurisdiction to consider the merits of those claims as well, and they are due to be dismissed without prejudice.

However, the Court uses this opportunity to supplement the reasoning of its order applying the *Rooker-Feldman* doctrine. (Doc. 50). The Eleventh Circuit "has recognized an 'important limitation' on the *Rooker–Feldman* doctrine when the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) (quoting *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983)). As was noted previously (*see* Doc. 51 at 15 n.10), while Local Act 470 does not authorize the Board, or the circuit court on direct appeal of a Board decision, to decide constitutional issues, constitutional claims arising from Mobile County termination proceedings can be raised in separate and distinct collateral suits. *Wright v. City of Mobile*, 170 So. 3d 656, 661–62 (Ala. Civ. App. 2014). The availability of such a collateral suit provided Smith the "reasonable opportunity" to raise his Count IV federal claim "in state proceedings," thus making *Rooker-Feldman* applicable to those claims.

precedent of *Parratt*, held that "even if McKinney suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation. **As any bias on the part of the Board was not sanctioned by the state and was the product of the intentional acts of the commissioners**, under *Parratt,* only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation." *McKinney*, 20 F.3d at 1563 (emphasis added). The court went on to conclude that, "[s]ince the Florida courts possess the power to remedy any deficiency in the process by which McKinney was terminated, McKinney can not claim that he was deprived of procedural due process." *Id.* at 1565.

Similarly, in this case, the Defendants' alleged negligent or deliberate failure to properly apply Local Act 470 and the Board Rules during his pre- and post-termination proceedings were "not sanctioned by the state" of Alabama and could be corrected by an appeal to the Mobile County circuit court. *See Longmire v. City of Mobile, Ala.*, Civil Action No. 16-0025-WS-M, 2017 WL 1352226, at *15 (S.D. Ala. Apr. 10, 2017) (Steele, J.) ("That Longmire restates and reformulates those claims for non-compliance with MCPB rules in constitutional terms in this action in no way diminishes the effectiveness or adequacy of the state remedial process to provide a remedy for those procedural defects by ruling directly on whether the MCPB rules were violated, whether the decision maker was biased, and so on.").

The fact that Smith " 'failed to avail himself of the full procedures provided by state law [i.e., the post-termination remedies] does not constitute a sign of their inadequacy.' " *McKinney*, 20 F.3d at 1565 (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 485 (1982)). Though Smith argues in his brief that this failure should be excused because he was "not sure where the correct place to file a Section XXXIV appeal might validly be according to law" (Doc. 52 at 16), the *McKinney* rule "does not look to the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court. Instead, the *McKinney* rule looks to the existence of an opportunity-to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so." *Foxy Lady, Inc. v. City of Atlanta, Ga.*, 347 F.3d 1232, 1239 (11th Cir. 2003) (per curiam) (quoting *Horton v. Board of County Comm'rs of Flagler County*, 202 F.3d 1297, 1300 (11th Cir. 2000)).

Smith's brief asserts that his "claims for deprivation of federal due process are not solely premised on Defendants' failure to follow Local Act 470 and the Board's Rules," arguing that "MCPB Rule 14.3(a) is unconstitutional if it condones the taking of a property interest without giving the employee an effective rebuttal means to respond to the official charged with the responsibility of making the termination decision." (Doc. 52 at 14 (quotation omitted)). As noted previously, the federal due process claims in Counts I and III are expressly predicated on the

Defendants' alleged deviation from those state laws, and the complaint is replete with various examples of the Defendants' alleged failure to adhere to those laws, with Smith going so far as to quote Board Rule 14.3(a) in full. Nowhere in Smith's complaint (Doc. 1), does he raise a claim that Board Rule 14.3(a), or indeed any part of Local Act 470 or the Board Rules, is unconstitutional. Smith even tacitly acknowledges this in his brief, noting that "[i]t may be that leave of court to amend will be necessary to have the pleading conform to the evidence." (Doc. 52 at 14).

"It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012). Moreover, a passing reference or conclusory request for amending a pleading embedded in an opposition brief is generally not the proper way to request leave to amend under Federal Rule of Civil Procedure 15(a)(2). *See Davidson v. Maraj*, 609 F. App'x 994, 1002 (11th Cir. 2015) (per curiam) (unpublished) ("It has long been established in this Circuit that a district court does not abuse its discretion by denying a general and cursory request for leave to amend contained in an opposition brief." (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009); *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc); and *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (per curiam) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1208 (11th Cir. 2012) (per curiam)

("The Fund's request for leave to amend appeared in its response to the Defendants' motion to dismiss. The Fund failed, however, to attach a copy of this proposed amendment or set forth its substance. Therefore, the district court did not err by denying the Fund's request."). Finally, the deadline to amend the pleadings set in the Federal Rule of Civil Procedure 16(b) scheduling order expired months before Smith filed his brief (*see* Doc. 29 at 4), and Smith has failed to demonstrate any "good cause" for amending his pleadings at this late stage in the proceedings. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418-19 (11th Cir. 1998) (per curiam) ("District courts are required to 'enter a scheduling order that limits the time to ... join other parties and to amend the pleadings ...' Fed. R. Civ. P. 16(b). Such orders 'control the subsequent course of the action unless modified by a subsequent order,' Fed. R. Civ. P. 16(e), and may be modified only 'upon a showing of good cause.' Fed. R. Civ. P. 16(b). This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.' " Fed. R. Civ. P. 16 advisory committee's note…[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."). For all of these reasons, the undersigned finds that any claim that Board Rule 14.3(a) is unconstitutional is not currently before the Court.

Nevertheless, a charitable reading of Smith's complaint reveals certain factual allegations that his pre-termination hearing did not provide the minimum constitutionally required due process, independent of "random, unauthorized" acts

such as the failure to follow the Board Rules and Local Act 470. The Defendants tacitly acknowledge this in their own briefs responding to the August 15 order, as both present argument that Smith's pre-termination hearing was constitutionally sufficient under current Supreme Court authority, despite the fact such an issue was not raised in the August 15 order as grounds for granting summary judgment under Rule 56(f). *See McKinney*, 20 F.3d at 1561-62 (determining that the plaintiff had received a sufficient pre-termination hearing prior to turn to the issue of whether state post-deprivation remedies provided sufficient due process to address an allegedly biased decisionmaker); *Ogburia v. Cleveland*, 380 F. App'x 927, 929-30 (11th Cir. 2010) (deciding whether there was sufficient pre-termination due process after determining that an adequate available state remedy foreclosed the "post-termination" due process claim). Because it was not raised in the Court's Rule 56(f) notice order, the Court will not rule on whether summary judgment is due to be granted on the issue of pre-termination due process at this time. However, summary judgment is otherwise due to be **GRANTED** in favor of all Defendants on the federal due process claim asserted in Counts I and III of the complaint because, as explained above and in the Court's August 15 order (Doc. 51), they are based on the alleged "random, unauthorized" acts of the Defendants for which adequate state court remedies exist. Because Sandy Stimpson was the only named Defendant involved in the pre-termination proceedings, the federal claims in Counts I and III will remain pending only as to him.

Accordingly, it is **ORDERED** that summary judgment under Federal Rule of Civil Procedure 56(f) is **DENIED** as to the federal claims in Counts I and III against Defendant Sandy Stimpson related to Smith's pre-termination proceedings, is otherwise **GRANTED** in favor of Stimpson as to the federal claims asserted in Counts I and III, and is **GRANTED** in favor of all other Defendants as to all federal claims asserted against them in Counts I and III. This order does not dispose of any claims under "Alabama Statutory Law" asserted in Count III.

As explained in the August 15 order, the pending motion for summary judgment (Doc. 50) is **MOOT** as to Count V and the federal claims in Count IV, as they have been dismissed by previous orders and are no longer pending. (See Docs. 31, 50). The pending motion for summary judgment (Doc. 50) is also **MOOT** to the extent Dees seeks qualified immunity on all remaining federal claims against him in his individual capacity, and to the extend Defendant Barnett seeks "official capacity immunity" on the federal claims against her in her official capacity, as the Court has determined Smith has failed to demonstrate a procedural due process claim against either of these defendants, *see supra*, and therefore need not determine whether such immunities apply. However, the motion for summary judgment is **DENIED** to the extent Barnett seeks to dismiss any of the pending state law claims against her based on "official capacity immunity," for the reasons previously explained in the August 15 order (*see* Doc. 51 at 9 – 10).

**DONE** and **ORDERED** this the 26th day of September 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**