# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL SMITH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 16-00478-N |
| | ) | |
| CITY OF MOBILE, *et al.*, | ) | |
|     Defendants. | ) | |

## ORDER

Over the course of several orders, the Court has disposed of most of the federal claims in this action. (*See* Docs. 31, 50, 55). Currently, the only pending federal claims are the pre-deprivation procedural due process claims asserted under 42 U.S.C. § 1983 against Defendant Mayor Sandy Stimpson in his official and individual capacities in Counts I and III of the complaint (Doc. 1). (*See* Doc. 55 at 14 – 15). Stimpson has filed a motion for summary judgment under Federal Rule of Civil Procedure 56 as to those remaining federal claims, as well as the state law claims asserted against him (Doc. 59). Plaintiff Michael Smith has timely filed a response (Doc. 62) in opposition to the motion, and Stimpson has timely filed a reply (Doc. 64) to the response. The motion is now under submission (*see* Doc. 60) and is ripe for disposition.[1] Upon consideration, the Court finds that Stimpson's motion for summary judgment is due to be **GRANTED** as to the remaining federal claims against him, and that all remaining state law claims are due to be **DISMISSED without prejudice**.

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 27, 28).

The Court assumes the parties' familiarity with the record and procedural history of this case and will therefore state only what is necessary to resolve the remaining claims in this action.

## I.  *Analysis*

### A.  **Remaining Federal Claims against Stimpson**

> It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property. More specifically, the Supreme Court has explained that a "tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before a state or state agency may terminate an employee. [*Cleveland Bd. Of Educ. v.* ]*Loudermill,* 470 U.S. [532,] 546, 105 S. Ct. [1478,] 1495[ (1985)]. In other words, the employee is entitled to "some kind" of pre-termination hearing. *Id.* at 542, 105 S. Ct. at 1493. That hearing is not a mini-trial and "need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S. Ct. at 1495.

*McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc).

As the record evidence shows, Stimpson terminated Smith from his position as a police officer with the City of Mobile by notice dated September 9, 2014, and served on Smith three days later, after "concur[ring] with the recommendation" for same made by "a non-adversary Trial Board." (*See* Doc. 41-6). Prior to Smith's termination, on August 29, 2014, Smith was served with a "Disciplinary Trial Board Notice" advising him that a "non-adversary Administrative Trial Board Hearing" would be held at Mobile Police Headquarters on September 3, 2014, beginning at

9:00 a.m. (Doc. 41-5 at 1)). Included with the Notice was a "Charge Sheet" advising Smith of the five disciplinary charges against him and providing the specific factual details underlying each charge. (*Id.* at 2 – 5). The trial board hearing convened as scheduled, at which Smith, assisted by retained counsel, was able to testify on his own behalf and present witnesses to testify on his behalf. (*See* Doc. 59-1 at 4; Doc. 41-9 at 153 – 154). "He thus received a pre-termination hearing and, with it, all the process due under *Loudermill*." *McKinney*, 20 F.3d at 1561–62 (finding ex-employee received sufficient pre-termination process where he "received written notice of the charges against him; at the Board hearing, he also heard an explanation of the Board's evidence; finally, with the assistance of counsel, he had the opportunity to present his side of the story through witnesses, evidence, and argument").[2]

---

[2] *See also Hardy v. Wood*, 342 F. App'x 441, 445–46 (11th Cir. 2009) (per curiam) (unpublished) ("[T]he undisputed evidence shows that Hardy was given adequate pre-termination notice and an opportunity to be heard. First, Spann and Hardy discussed McMillian's sexual harassment charges in the taped June 28, 2005 interview. Spann informed Hardy of specific events McMillian claimed constituted inappropriate behavior. Second, Defendant Wood's November 4, 2005 letter informed Hardy of the allegations against him, including that he (1) made sexual advances towards McMillian, and (2) attempted to instigate an investigation against McMillian because she had filed a sexual harassment complaint against him. Wood's letter listed by number the personnel rules Hardy allegedly violated. The letter informed Hardy there would be a pre-termination hearing on the allegations, at which he could present evidence and be represented by counsel. []The record shows that, at the pre-termination hearing, Hardy was represented by counsel, submitted numerous documents and called eight witnesses in his defense. Indeed, one of the documents Hardy placed in evidence was DYS's grievance procedure, indicating that he understood that his filing of the grievance was at issue in the hearing. Because the undisputed facts show that Hardy was informed of the charges against him and had an opportunity to present his side of the story, there is no genuine issue of material fact as to whether Wood violated Hardy's right to procedural due process before Hardy's termination."); *Ogburia v. Cleveland*, 380 F. App'x 927, 929–30 (11th Cir. 2010) (per curiam) (unpublished) ("'[I]t is undisputed that

Smith's primary complaint is that he "was not afforded an opportunity to tell his side of the story to" Stimpson, the final decision-maker, because Stimpson was not present at the trial board hearing. (Doc. 62 at 3). However, the Eleventh Circuit Court of Appeals has rejected the contention that, "as a matter of law, a pre-termination hearing must be held before the 'ultimate decision-maker' in order to satisfy procedural due process." *Laskar v. Peterson*, 771 F.3d 1291, 1298 (11th Cir. 2014). *See also Martin v. Guillot*, 875 F.2d 839, 844 (11th Cir. 1989) (finding the "minimum constitutional standards for procedural due process" were met where, *inter alia*, employee "received a hearing before a due process committee which recommended that his employment be terminated[, and, a]fter a review, the president accepted the committee's recommendation").

In addition to his not attending the hearing, Smith also appears to claim that Stimpson did not review any of the evidence presented at the trial board hearing prior to adopting the trial board's recommendation, asserting that Stimpson "could not have read a transcript of the pre-disciplinary hearing before making his final decision…- as it was not transcribed for weeks thereafter." (Doc. 62 at 3). Smith cites no record evidence supporting this assertion. Regardless, even if the assertion is true, Smith has failed to persuade the undersigned that it is of any legal

---

Ogburia was advised regarding the charges against him by receiving a letter from Human Resources detailing the charges and copies of the formal complaints. Additionally, Ogburia provided the Investigation Committee with detailed written responses, complete with exhibits, denying the sexual harassment allegations. Ogburia also verbally denied the allegations and presented his side of the story to the Investigation Committee. Thus, Ogburia was provided both notice and an opportunity to respond, and the district court did not err in concluding he received adequate pre-termination due process.").

significance in this context.

It is true that the *Laskar* panel noted the ultimate decision-maker was provided "a copy of the [pre-termination] hearing record" prior to adopting the recommendation of the committee that held the hearing. *See* 771 F.3d at 1298. However, nothing in *Laskar* indicated that this detail was dispositive of, or even material to, the holding in that case, and Smith has cited no authority indicating otherwise. Given that Smith was "indisputably afforded a pre-termination opportunity to be heard by **a decisionmaker** when he appeared before the" trial board, *id.* (emphasis added), and given that the Mobile County Personnel Board rules provide a full *de novo* evidentiary hearing and judicial review as post-termination remedies (*see* Doc. 41-3 at 25 – 26 [Local Act 470, § XXXIV]; Doc. 41-4 at 55 – 56 [Board Rules 14.4 – 14.7]), any failure by Stimpson to review the record of the trial board proceedings prior to accepting the board's recommendation did not render Smith's pre-termination due process constitutionally deficient. *See Laskar*, 771 F.3d at 1298 ("[I]n those cases relied upon by Laskar, the reviewing courts suggested procedures warranted by the factual circumstances of the case or, where particular procedures were in place, determined whether those procedures as implemented provided due process. But, 'not all situations calling for procedural safeguards call for the same kind of procedure.' *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972). That there exists case law within this Circuit and in other circuits where a pretermination hearing was held before a final decisionmaker does not require the conclusion that the procedures applied here

failed to comport with due process."); *Loudermill*, 470 U.S. at 545 ("We have pointed out that the formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action. Under state law, respondents were later entitled to a full administrative hearing and judicial review." (citations and quotations omitted)).

Smith's other claims of deficient pre-termination process are also without merit. While he complains that his counsel could "only operate as an observer" who was "not allowed to speak or participate in the pre-disciplinary hearing" (Doc. 62 at 2), Smith has failed to show that this unconstitutionally hindered him from "present[ing] his side of the story" to the trial board. *Loudermill*, 470 U.S. at 546. Moreover, Smith has cited no authority indicating that constitutional due process even entitled him to be represented by counsel at the pre-termination hearing. *But see Panozzo v. Rhoads*, 905 F.2d 135, 140 (7th Cir. 1990) ("[A]n employee has no constitutional right to counsel at a pre-termination hearing." (citing *Buschi v. Kirven*, 775 F.2d 1240, 1254–1256 (4th Cir. 1985)). While Smith complains that he was only allowed to respond " ' verbally' and not in written form" (Doc. 62 at 2), procedural due process does not require that both of those options be provided. *See Loudermill*, 470 U.S. at 546 ("The opportunity to present reasons, either in person **or** in writing, why proposed action should not be taken is a fundamental due process requirement." (emphasis added)).

Smith also complains that, while he was not permitted to cross-examine adverse trial board witnesses, Smith himself was cross-examined by the trial board members and their counsel (Doc. 62 at 2). Though Smith concedes that "due process does not require a right to confront and cross-examine witnesses at the pre-disciplinary hearing stage[,]" he argues that "[i]t is equally true that *Loudermill* does not grant or authorize the City with a right to confront and cross-examine Smith at the pre-disciplinary hearing stage, whether by supervisors or the legal Counsel for the City of Mobile." (Doc. 62 at 13 – 14 (quotation and emphasis omitted)). The undersigned disagrees that the trial board's cross-examination of Smith rendered his pre-termination due process deficient. The essential function of a pre-termination hearing is to give an employee the "opportunity to present reasons…why proposed action should not be taken…" *Loudermill*, 470 U.S. at 546. So long as an employee has "an opportunity to present his side of the story[,]" *Loudermill*, 470 U.S. at 546, nothing in *Loudermill* forbids the hearing officers from questioning that story. Simply because a full evidentiary hearing is not <u>required</u> for pre-termination due process, it does not follow that taking additional evidence beyond simply hearing the employee's side of the story is impermissible. *See Harrison v. Wille*, 132 F.3d 679, 684 (11th Cir. 1998) (per curiam) ("Before termination, a full evidentiary hearing is not required. *Loudermill*, 470 U.S. at 545, 105 S. Ct. at 1495. Nor does the pretermination hearing have to establish conclusively the propriety of the termination. *Id.* Plaintiff need only be given an opportunity to present his side of the story.").

Finally, while Smith complains the trial board failed to follow various Mobile County Personnel Board rules and regulations, "the procedural component of the Due Process Clause does not require the States to comply with state-created procedural rules. Instead, it requires them to adhere to a certain minimal level of process when seeking to deprive an individual of a substantive interest protected by the Clause—namely, 'life, liberty, or property.' " *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 794 F.3d 1327, 1330 (11th Cir.) (quoting U.S. Const. Amend. XIV, § 1), *cert. denied*, 136 S. Ct. 25 (2015). *Accord, e.g.*, *Longmire v. City of Mobile, Ala.*, No. CV 16-0025-WS-M, 2017 WL 1352226, at *8 & nn. 14 -15 (S.D. Ala. Apr. 10, 2017) (citing similar holdings). *See also Panozzo*, 905 F.2d at 140 ("States and municipalities are of course free to provide greater procedural protections than those offered by the federal constitution, but it does not follow that these enhanced protections enlarge federal rights. The district judge correctly noted that local rules do not act as a ratchet tightening the Due Process Clause." (quotations omitted)). Moreover, as the Court previously determined, any violations of the Personnel Board rules and regulations are "the kind of 'random, unauthorized acts' for which 'pre-deprivation process is impractical.' "³ (Doc. 55 at 9 (quoting *Hudson v. Palmer*, 468 U.S. 517, 532

---

³ Smith also asks the Court to "revisit" the "issue of non-randomness," claiming that "the repetitive nature of the due process deprivations" renders them "not random." (Doc. 62 at 2 n.1. *See also id.* at 3 n.2 ("These acts by MPD are not random; but rather repetitive.")). The Court finds no reason to reconsider its previous determination on this issue.

As best the Court can decipher, Smith, or at least his counsel, claims the Mobile Police Department and Mayor Stimpson long ago chose to abandon any pretense of complying with the Personnel Board's rules for pre-termination hearings in favor of holding "non-adversary trial boards" that are essentially "kangaroo courts" subject to the whims of those conducting them. Even if this is true, it does not render those

(1984))).

Accordingly, the Court finds that Stimpson's motion for summary judgment (Doc. 59) is due to be **GRANTED** as to the remaining federal claims against him in Counts I and III.[4]

B.     **Remaining State Law Claims**

After granting summary judgment to Stimpson on the remaining federal claims against him, only state law claims will remain pending in this action.  The

---

actions any less "random" and "unauthorized."  In the context of procedural due process, "randomness" is not judged from the standpoint of the state employee, who may indeed be acting intentionally, but rather from that of the state under the "color of [whose] law" the employee is acting.  *See Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1317 (11th Cir. 2011) ("So long as the State provides adequate post-deprivation remedies, 'due process d[oes] not require pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property.' *McKinney v. Pate*, 20 F.3d 1550, 1562–63 (11th Cir. 1994) (en banc). []Pre-deprivation process is impractical 'where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure,' because 'the state cannot know when such deprivations will occur.' *Hudson*, 468 U.S. at 532, 533, 104 S. Ct. at 3203.").

The state of Alabama provides an "established state procedure" to terminate Mobile public employees, in the form of Local Act 470 and the Personnel Board rules carrying the force of law.  By deliberately disregarding those rules, as Smith claims, Stimpson and the trial board members commit "random, unauthorized acts" that contravene this "established state procedure," acts that the state cannot anticipate regardless of how frequently they may occur.  Because the state provides adequate post-deprivation remedies to correct "random, unauthorized" violations of the Personnel Board rules, in the form of review by both the Mobile County Personnel Board and the Mobile County Circuit Court, procedural due process is satisfied.

[4] While Smith's complaint (Doc. 1) alleges other deficiencies in pre-termination process, he has not argued them in his response to Stimpson's present motion.  Accordingly, those grounds are deemed abandoned.  *See Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (There " 'is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.' " (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc))).

Defendants have also moved for summary judgment on those claims. However, at present, the Court exercises only supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a).[5] Under § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…the district court has dismissed all claims over which it has original jurisdiction…" 28 U.S.C. § 1367(c)(3). "The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) (per curiam) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)).

The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Id.* at 1089 (citing *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)). Moreover, Smith requests, "[i]n the event this Federal Court dismisses all of Smith's Federal Claims, …that this Court will decline to exercise supplemental jurisdiction over" his state law claims. (Doc. 62 at 17). Upon consideration, the Court declines to continue exercising supplemental jurisdiction over all remaining state law claims[6] in accordance with § 1367(c)(3) and

---

[5] Smith has not alleged diversity of citizenship under 28 U.S.C. § 1332 as a basis for original jurisdiction, and nothing in the record indicates that the requisites for such jurisdiction are present.

[6] The only state law claim the Court has addressed on the merits is the equal protection claim under "Alabama's…statutory law" in Count V, which the Court dismissed with prejudice under Federal Rule of Civil Procedure 12(c). (*See* Doc. 31).

will thus **DISMISS** them **without prejudice**.[7]

## II.  *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that Stimpson's motion for summary judgment (Doc. 59) is **GRANTED** as to the remaining federal claims against him in Counts I and III, which are **DISMISSED with prejudice**; that all remaining state law claims in this action are **DISMISSED without prejudice** in accordance with the authority to decline supplemental jurisdiction under § 1367(c)(3); and that the pending motions for summary judgment (Docs. 58, 59) are **MOOT** to the extent they are not otherwise disposed of in this order.  The final pretrial conference and all remaining scheduling order deadlines are **CANCELED.**

Final judgment shall issue separately in accordance with this order, the Court's previous orders dismissing various claims, and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 12th day of December 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] Stimpson's motion for summary judgment takes no position on the issue of supplemental jurisdiction, while the other Defendants' motion requests the Court decline to exercise supplemental jurisdiction only "[i]n the event any of Smith's state law claims somehow survive summary judgment…"  (Doc. 58 at 18).  Because the Court agrees with the other Defendants that "[t]he Alabama courts are better positioned to" decide the state law claims in this action (*see id.*), the Court finds it appropriate to decline supplemental jurisdiction over those claims without addressing their merits first.